## UNITED STATES v. PACIFIC MARKET CO.

### No. 1896.

District Court, D. Wyoming.

August 29, 1930.

Albert D. Walton, U. S. Atty., of Cheyenne, Wyo., for the United States.

Corthell, McCollough & Corthell, of Laramie, Wyo., for defendant.

KENNEDY, District Judge.

This is an action at law in which the plaintiff seeks to recover of the defendant stipulated rentals of $6,010 under a written lease, less certain credits representing over-assessment of income taxes. The suit was tried to the court, a jury having been expressly waived. Defenses are set up raising both questions of fact and law on behalf of the defendant, but, as the scope of the pleadings is not called in controversy, it would seem unnecessary to review them.

A sketch of the pertinent facts would seem to be substantially as follows: The government is the owner of what is commonly known as the Pole Mountain Reservation, comprising about 65,000 acres, located several miles west of the city of Cheyenne, Wyo. The reservation for a number of years has been used for the purposes of target and maneuver practice by detachments of the United States Army. Prior to July 1, 1917, under purported authority of law, the Secretary of War leased the reservation to the defendant corporation for grazing and hay cutting purposes, covering a term of five years and until July 1, 1922. Some time in 1921 the officers in charge of Ft. D. A. Russell Military Reservation, having supervision of the reservation, notified the defendant that the military establishment was desirous of storing some explosives upon the property, which right had not been reserved under the lease then in existence, and that it would be necessary to cancel the old lease and execute a new one carrying this proviso, or that the lease would be unconditionally canceled. Thereupon, the government and the defendant entered into a new lease which was executed by the Secretary of War on December 8, 1920, and by the defendant corporation on January 6, 1921. This new lease purported to lease the premises until July 1, 1922, with a renewal at the option of the government for an additional period of five years. The specified consideration was a rental of $6,010 per annum, payable in advance on the

first day of July following. The purposes of the lease were for grazing and hay cutting, but reserving therefrom what is known as the Fraser meadow. It further provided that it should be revocable at the will of the Secretary of War. It reserved the right to the United States to store explosives at such places and in such quantities as is desired on the land leased, and further provided that nothing in the privilege granted should operate to prevent or restrict the use of the land by military authorities for maneuvers, drills, target firing or other exercises as such authorities may deem necessary. In June, 1921, which was before the rent became due under the new lease, the defendant notified the officer in charge at Ft. Russell that he desired to cancel the lease. The matter was taken up by that official with the department at Washington, and in September of the same year the department ruled, and the official in charge notified the defendant, that a cancellation of the lease would not be accepted. The defendant had paid his yearly rentals under the old lease, which included the fourth year thereof, beginning on the 1st day of July, 1920, and which carried the lease so far as paid rentals were concerned until the 1st day of July, 1921. After December, 1920, when the new lease was executed, the defendant never used said premises in any way. There is evidence that the premises were used by other parties in grazing flocks and herds thereon. One of the parties so using the same testified that he made application to the officer in charge at Ft. Russell and was told that it would be satisfactory, provided he secured the consent of the defendant to such use. In a conference with the defendant, it was agreed that if the lease were canceled, that matter being then under consideration by the War Department, the parties seeking to use the premises were to pay the government for the use of the same. There is also evidence that explosives were stored upon the premises at times and places unknown to the defendant, and that at intervals soldiers fished and hunted upon the reservation. There is testimony to the effect that the caretaker of the reservation appointed by the War Department permitted the harvesting and sale of hay from the reservation, in regard to which the government offers testimony that it was beyond the powers and authority of this caretaker to act in such a manner. A public highway was constructed across the reservation, probably during the period of the old lease.

Under this statement of facts, the defendant contends that the government is not entitled to recover. Shorn of legal technicalities, the principal defenses are: (1) That the Secretary of War had no authority in law to lease the premises; (2) that the lease is void for a lack of mutuality or perhaps, more properly speaking, that being revocable at will by the Secretary of War, it was likewise revocable at the will of the defendant; (3) that the plaintiff did not give to the defendant during the period of the lease the sole use of the premises, thereby forfeiting its right to recover the rental in controversy, no part of which at any time the defendant had paid under the terms of the new lease; (4) that the instrument sued on is not a lease, but a license, upon which recovery under the circumstances cannot be had.

The second of the above contentions seems to me to offer the greatest doubt as to the right of the plaintiff to recover and will, therefore, be first discussed. Upon this phase of the case, the defendant strongly emphasizes that portion of the instrument sued on which provides that the lease shall be revocable at the will of the Secretary of War. Many cases are cited to the point that in an instrument of this character, made revocable at the will of one of the parties without condition, it is nonenforceable and likewise revocable at the will of the other party. On the other hand, counsel for the government contends that this is the form of a lease frequently upheld by the courts, and citing authorities in support of that contention. I have not had an opportunity to examine in detail all of these authorities. I find that some of them carry conditions which are not present in the case at bar. Leases which reserve the option to cancel and declare null and void a lease in the event a sale of the premises shall be made during its life have been sustained. In some of these cases, however, it was provided that, in the event of cancellation, the lessee should be paid a consideration. Lewis v. Agoure, 8 Cal. App. 146, 96 P. 327. In the case of Goltra v. Weeks, 271 U. S. 536, 46 S. Ct. 613, 70 L. Ed. 1074, strongly relied upon by counsel for the government, where the government so reserved the right to terminate a lease, we find that the situation was likewise different than in the case at bar. There the substance of the reservation was that the lessor might terminate the lease in the event the lessee was not complying with the obligations of his contract according to the judgment of the chief of engineers. In such a case, it is held that where parties enter into a contract to delegate a third party as arbiter, they are bound by it

even though the terms may seem harsh and unwise, because by a formal stipulation they have selected a party as arbiter over conditions as to whether or not the terms of the lease are being complied with. As it appears to me, such a case is distinguishable from the case at bar, where the option is reserved to cancel without any condition named in the instrument. Here revocation may be based upon the mere caprice of the lessor without regard for the rights of the lessee. Of course, if such a lease becomes an executed contract, there could be no doubt of the right to recovery of the stipulated rentals. In the case at bar we have the situation presented of the defendant never occupying or using the premises under the new lease, although having paid rental under an old lease up to July 1, 1921, and previous to that time having notified the plaintiff of his desire to cancel the new lease. If it be a true and proper rule of law that a lease of this character is revocable at the will of either party, even though the instrument itself provides for such revocation solely at the will of one, then the defendant was within its rights in canceling the lease at its election and before the time when the new rentals actually began to run for the period to be covered. Many cases are cited by counsel for defendant upon the point, but the clearest and most succinct expression of the rule is selected from an opinion written by Judge Lurton while a member of the Circuit Court of Appeals of the Sixth Circuit (afterward Associate Justice of the Supreme Court) in the case of Tennessee Oil, Gas & Mineral Co. v. Brown, 131 F. 696, where at page 701 it is said:

"But, independently of any other ground, the general provision of this lease, authorizing the lessee to abandon whenever he should see fit, makes it a lease at the will of the lessee. An estate terminable at the will of one of the parties is determinable at the will of either, though it purports to be terminable at the will of one only. 1 Washburn, Real Property, 371 (side paging); Taylor's Landlord & Tenant, § 14; 18 Am. & Eng. Ency. of Law (2d Ed.) 182."

No reason has been presented which would seem to justify the conclusion that a different rule should prevail in regard to the interpretation of contracts between the government and citizens and those between private citizens. No condition in any form, either in regard to the intended use of the premises on the part of the government, or for the protection of the lessee, appears to surround the right of revocation at any time by the lessor. Under these circumstances, I conclude that the defendant was itself within its legal rights in exercising the right of revocation, which it did before the premises were used under the lease, before the term began to run for which the rental moneys so sought to be recovered, and likewise before the rent became payable.

The remaining defenses briefly outlined have not seemed to me to present merit, with the possible exception of the questioned right of the Secretary of War under the circumstances in this case to lease the premises. As to this defense, I have not had time to investigate fully, and find it unnecessary in the light of what has heretofore been said to consider the point.

I find no merit in the counterclaim of the defendant, nor do I feel that relief can be given in this suit for the amount which defendant admittedly has coming from the government on account of overassessed income taxes, which matter must take its regular course.

For the reasons stated, the general finding and judgment of the court will be for defendant, and the plaintiff's petition will be dismissed, reserving to it proper exceptions.